## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE GRAY, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>IDEAVILLAGE PRODUCTS CORP., D/B/A COPPER FIT, a New Jersey corporation,<br><br>                              Defendant. | Case No. 1:23-cv-01233<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Stephanie Gray, individually and on behalf of the Class defined below of similarly situated persons ("**Plaintiff**"), alleges the following against Defendant Ideavillage Products Corp. d/b/a Copper Fit ("**Defendant**," or "**Copper Fit**"), based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### NATURE OF THE ACTION

1.    Plaintiff brings this class action against Defendant to redress the false marketing claims with which Defendant has saturated its advertising for a popular line of compression garments, namely its Copper Fit ICE Compression Knee Sleeve, Copper Fit ICE Plantar Fascia Ankle Sleeve, Copper Fit ICE Compression Gloves, Copper Fit ICE Compression Elbow Sleeve, Copper Fit ICE Compression Socks and the Copper Fit ICE Compression Back Support (the "**Copper Fit ICE Products**"[1]). Specifically, Defendant is making false claims that (a) CoQ10 infused into the fabric of the Copper Fit ICE Products is motion activated and then released and absorbed into the human body when using the product, and (b) the purportedly absorbed CoQ10 provides health benefits, including increased energy.

---

[1]    Plaintiff reserves the right to add to or amend the definition of the "Copper Fit ICE Products" through facts learned through discovery or further investigation.

2.    Because Defendant's Copper Fit ICE Products cannot deliver the alleged benefits of CoQ10 (which are herself dubious), Plaintiff seeks to put an end to Defendant's unfair, false, and deceptive marketing and sales of its Copper Fit ICE Products and to obtain the financial redress to which Plaintiff and class members are entitled.

## PARTIES

3.    Plaintiff Stephanie Gray, is, and at all times mentioned herein was, an individual citizen of the State of New York residing in the County of Kings.

4.    Defendant Ideavillage Products Corp. is a New Jersey corporation with its principal place of business at 155 Route 46 West, Wayne, New Jersey 07470.

5.    Defendant develops, manufactures, markets, and sells various consumer products, including the Copper Fit® branded products described here, to consumers throughout the United States, including in California, New York, and New Jersey. Defendant promotes and sells its products, including the Copper Fit branded products, through national direct response television advertising commonly called "As Seen on TV" and an active social media presence (i.e., Facebook, Instagram, Twitter, etc.). Defendant also promotes and sells its products (a) through well-known and leading mass retailers in the United States, including, but not limited to, Target, Walmart, CVS, Rite Aid, Walgreens, Dick's Sporting Goods, and more, (b) online through the web sites of the foregoing retailers and major online retailers, and (c) online through its own Copper Fit branded web sites, including https://www.copperfitusa.com, https://www.getcopperfit.com, https://www.copperfitback.com/ and https://copperfitice.com/.

6.    Defendant has achieved significant success selling its Copper Fit branded products (copper-infused compression garments such as knee sleeves, elbow sleeves, back belts or braces, socks, and gloves) since their introduction in 2014, by using substantial marketing campaigns led by its brand ambassadors, NFL Hall of Fame and Super Bowl champions Brett Favre and Jerry Rice and, recently, Academy Award-Winning actress, Gwyneth Paltrow.

7.    Defendant's advertisements and promotions are so ubiquitous that Copper Fit has become a well-recognized brand for compression and support garments that consumers trust.

8.    Defendant touts itself as a health and wellness company that purportedly uses innovative technologies to enhance the health and wellness of the customers who buy and use its products.

9.    The copperfitusa.com web site links to an "About Us" landing page and describes the Copper Fit story this way: "Copper Fit® knows what it's like when you are unable to perform at your best. We know the cycle of soreness, pain, and longer recovery periods. We believe there is a better way. We are motivated by the idea of living in a world with less pain and increased mobility; encouraged by new technologies, materials, and fabrics designed to improve performance, support joints and muscles, aid in recovery …". On the same page Copper Fit emphasizes "Our Mission" in stating: "Millions of people, from extreme athletes to everyday people, have already benefited from Copper Fit® products. We always keep them and our mission in mind: to empower people to stay active, feel better and enjoy life, every day.[2]

10.    In the same December 20, 2021 Press Release, Defendant added in a section entitled "About Copper Fit" that "Copper Fit is about seeking revolutionary, copper-infused technologies that support active, healthy lifestyles. The company mantra is to bring health and wellness to the forefront of your everyday through a wide range of products designed to provide peace, comfort, and performance at any age. Copper Fit's innovative technologies are meant to empower and enhance your body to a heightened wellbeing and provide purpose-driven, copper- infused products that work naturally with your body."[3]

11.    As shown below, Defendant made numerous misrepresentations and omissions of material fact regarding the Copper Fit ICE Products in order to entice Plaintiff and the putative Class of Copper Fit ICE Product purchasers. Plaintiff and the Class members read and relied on Defendants' misrepresentations and omissions and paid a price premium for Defendant's Products. Had Plaintiff and all reasonable consumers, including Class[4] members, known Defendant's Copper

---

[2] *See* https://www.copperfitusa.com/pages/about-us last viewed on February 14, 2023.
[3] *Id*.
[4] The precise definition of the "Class" is defined below.

Fit ICE Products were mislabeled and misrepresented, they would not have purchased the Copper Fit ICE Products or would have paid less for them.

12.    This Class Action Complaint seeks to recover monetary damages on behalf of Plaintiff and the Class, and injunctive relief to halt Defendant's deceptive and illegal actions alleged herein.

## JURISDICTION AND VENUE

13.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

14.    This Court has jurisdiction over the Defendant because it operates in this District, and the unlawful business practices which give rise to this action likely occurred in this District.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Venue is also proper because Plaintiff Gray resides in this District.

## COMMON FACTUAL BACKGROUND

**I.    Defendant's Prior False Claims That The Copper In Its Copper-Infused Copper Fit Products Provided Therapeutic, Health and Performance Benefits.**

16.    Through an extensive and nationwide marketing campaign, Defendant marketed its Copper Fit branded compression clothing products, including the "Copper Fit Elbow Sleeve," "Copper Fit Knee Sleeve" and "Copper Fit Back Pro," as "advanced cutting-edge compression garments designed to help relieve muscle and joint soreness." Defendant claimed that its elbow and knee sleeves "provide support for muscle stiffness," "reduce recovery time of muscles," "support increased oxygenation of working muscles," and "help prevent strain and fatigue," in addition to other representations. Defendant also claimed that its Copper Fit Back Pro product provided, among other benefits, "lower back support for greater mobility and comfort," "everyday

support and relief for lower back muscles," and "maximum comfort and support for lower back muscles."

17.  Defendant also claimed that "the Copper Fit high-performance compression fabric is blended with therapeutic copper, essential to your body; two technologies combined to help provide support for muscle soreness and aid in recovery and performance," thereby implying that copper infused in the Copper Fit products was absorbed into the human body to provide "essential" and "therapeutic" benefits to consumers.

18.  Defendant's implications regarding the health and therapeutic benefits of its copper-infused Copper Fit products were false because the copper infused in the products was not absorbed into the human body from wearing and using the products. Plus, even if any infused copper was absorbed into the human body, it did not provide any therapeutic, health or performance benefits.

19.  Defendant was not alone in cheating consumers with false representations regarding the purported therapeutic, health and performance benefits of its copper-infused compression garments.

20.  On November 25, 2015, the Federal Trade Commission (the "FTC") filed a complaint against Tommie Copper, Inc. ("TCI"), a competitor of Defendant, and its owner, Thomas Kallish, claiming that they falsely and deceptively advertised that their copper-infused compression clothing provided pain relief benefits to consumers or relieved chronic or severe pain or inflammation caused by diseases, including multiple sclerosis, arthritis and fibromyalgia, and that such false and deceptive conduct caused substantial injury to consumers and unjustly enriched TCI and Kallish (the "Tommie Copper FTC Action").[5]

21.  The FTC settled the Tommie Copper FTC Action with a stipulated federal court order (a) imposing an $86.8 million judgment against the  Defendant, and upon Defendant's payment of $1.35 million, suspending the balance of the judgment amount subject to compliance with certain other conditions, (b) enjoining the    Defendant from continuing to make

---

[5] See *Federal Trade Commission vs. Tommie Copper, Inc. et, al.*, Case No. 7:15-cv-09304-VB, Dkt. No. 3.

misrepresentations regarding the pain or inflammation reducing benefits of copper-infused products, and (c) requiring TCI and Thomas Kallish to have competent and reliable scientific evidence before making future claims about pain relief, disease treatment, or health benefits.[6]

22.    Consumers also filed class action lawsuits against TCI based on its false claims that its copper-infused compression clothing relieved pain and provided other health benefits. TCI settled those claims on a class basis for $750,000.[7]

23.    Defendant also faced consumer class actions similar to those filed against TCI. For example, on August 13, 2015, three California residents filed a proposed class action against Copper Fit in the U.S. District Court for the Central District of California alleging that Copper Fit falsely and deceptively promoted its copper-infused compression products, including the "Copper Fit Elbow Sleeve, Copper Fit Knee Sleeve: and "Copper Fit Back Pro," as providing therapeutic and health benefits, including purportedly relieving pain, relieving muscle and joint stiffness and soreness, preventing strain and fatigue, reducing swelling, and improving recovery time.[8] Similarly, on May 15, 2015, a resident of Iowa commenced a proposed class action against Copper Fit in the U.S. District Court for the District of New Jersey asserting similar claims.[9]

24.    Although the claims in the earlier California and New Jersey actions had merit, on August 7, 2015, and before the certification of any class, the plaintiff filed a notice of dismissal of the New Jersey action against Copper Fit,[10] and on December 2, 2016, and before the certification of any class, the parties stipulated to the dismissal of the California action against Copper Fit.[11]

25.    Since resolving the class action litigation it faced in 2015 and 2016, Copper Fit made some changes to its claims of therapeutic and health benefits stemming from the copper in

---

[6] See *Federal Trade Commission vs. Tommie Copper, Inc.* et, al., Case No. 7:15-cv-09304-VB, Dkt. No. 5). *See also* https://www.ftc.gov/news-events/news/press-releases/2015/12/tommie-copper-pay-135-million-settle-ftc-deceptive-advertising-charges (FTC press release regarding the settlement order and judgment) last viewed on February 14, 2023.

[7] *See* https://topclassactions.com/lawsuit-settlements/closed-settlements/tommie-copper-athletic-clothing-class-action-settlement/ *last viewed on* February 14, 2023. *See generally In re: Tommie Copper Products Consumer Litigation*, Case No. 7:15-cv-03183-AT, in the U.S. District Court for the Southern District of New York.

[8] *See Debra Murphy et al v. IdeaVillage Products Corp.*, 5:15-cv-01638-AB-DTB, Dkt. No. 1.

[9] *See Ortiz v. Ideavillage Products Corp.*, 2:15-cv-03365-ES-JAD, Dkt. No. 1.

[10] *See Ortiz v. Ideavillage Products Corp.*, 2:15-cv-03365-ES-JAD, Dkt. No. 17.

[11] *See Debra Murphy et al v. IdeaVillage Products Corp.*, 5:15-cv-01638-AB-DTB, Dkt. No. 27.

its copper-infused compression clothing. However, as alleged below, Copper Fit continues to make false and misleading claims regarding the Copper Fit ICE Products as of the date of this Class Action Complaint.

**II.    Defendant's False and Misleading Claims That CoQ10 In Its CoQ10-Infused Copper Fit ICE® Products Is Absorbed Into the Human Body and Provides Health Benefits, Including Increased Energy.**

26.    Coenzyme Q10, commonly called CoQ10, is an antioxidant that the human body naturally produces. Human cells use CoQ10 for growth and metabolism.[12]

27.    The vast majority of people naturally produce sufficient CoQ10 and do not require any additional CoQ10 for their health and well-being, including energy levels. For some people, CoQ10 blood levels may decrease due to age, certain conditions such as heart disease, or cholesterol lowering medications (*i.e.*, statins).[13]

28.    "CoQ10 dietary supplements are available as capsules, chewable tablets, liquid syrups, wafers and by IV." Such dietary supplements "might help prevent or treat certain heart conditions, as well as migraine headaches." According to the Mayo Clinic, "[b]ecause CoQ10 is involved in energy production, it's believed that this supplement might improve your physical performance. However, research in this area has produced mixed results."[14]

29.    The Mayo Clinic recommends that people only take CoQ10 supplements "under

---

[12] *See* https://www.mayoclinic.org/drugs-supplements-coenzyme-q10/art-20362602 last viewed on February 14, 2023.

[13] *Id.*

[14] *Id.* The web site of the Oregon State University Linus Pauling Institute Micronutrient Information Center (https://lpi.oregonstate.edu/mic/dietary-factors/coenzyme-Q10#athletic- performance) states that "[t]here is little evidence that supplementation with coenzyme Q10 improves athletic performance in healthy individuals. A few placebo-controlled trials have examined the effects of 100 to 150 mg/day of supplemental coenzyme Q10 for three to eight weeks on physical performance in trained and untrained men. Most did not find significant differences between the group taking coenzyme Q10 and the group taking placebo with respect to measures of aerobic exercise performance, such as maximal oxygen consumption (VO2 max) and exercise time to exhaustion (86-90). One study found the maximal cycling workload to be slightly (4%) increased after eight weeks of coenzyme Q10 supplementation compared to placebo, although measures of aerobic power were not increased (91). Two studies actually found significantly greater improvement in measures of anaerobic (87) and aerobic (86) exercise performance with a placebo than with supplemental coenzyme Q10. More recent studies have suggested that coenzyme Q10 could help reduce both muscle damage-associated oxidative stress and low-grade inflammation induced by strenuous exercise (92-95). Studies on the effect of supplementation on physical performance in women are lacking, but there is little reason to suspect a gender difference in the response to coenzyme Q10 supplementation."

your doctor's supervision."[15]

30.    CoQ10 is one of the most popular dietary supplements in the United States,[16] and the CoQ10 dietary supplements industry has engaged in a massive promotion of untold, but questionable, purported CoQ10 health benefits.

31.    The CoQ10 dietary supplement industry has generated its own controversy. To realize any benefits of CoQ10 supplementation at a cellular level, an individual must achieve effective or optimum CoQ10 blood levels. In its raw form, however, CoQ10 is a crystalline powder that is insoluble in water, and poorly soluble in fat, and thus not easily absorbed even in the digestive track when taken by mouth (let alone from fabric through the skin). CoQ10 supplement manufacturers have faced their own class action lawsuits asserting that they have made false claims regarding the effectiveness of their CoQ10 supplements and the absorption rates of such supplements when ingested.[17]

32.    In order to take advantage of the CoQ10 "health" hype created by the diet supplement industry, and to deceive consumers, Defendant introduced the Copper Fit ICE Products as a brand extension line of its existing Copper Fit branded products.[18]

33.    Defendant, via its websites, product packaging, social media, online retail outlets, and other advertising and promotion, prominently markets and sells its Copper Fit ICE Products as being infused with CoQ10 through "micro-encapsulation technology," and falsely claims that the infused CoQ10 is motion activated and then released and absorbed into the human body when using the product, and that the purportedly absorbed CoQ10 provides health benefits, including increased energy.

34.    The Copper Fit ICE Products packaging contains false and misleading statements regarding the benefits of CoQ10. The product packaging of the Copper Fit ICE compression sleeve

---

[15] *Id.*

[16] *See* https://www.consumerlab.com/news/consumers-returned-to-pre-pandemic-supplement- uses/02-24-2022.

[17] *See, e.g.*, https://www.prnewswire.com/news-releases/coq-10-class-action-settlement-300686138.html (Walmart settles CoQ10 supplement class action for $1.3 million) last viewed on February 14, 2023.

[18] *See, e.g.*, https://web.archive.org/web/20220527063329/https://www.copperfitusa.com/collections/ice (archived screen capture of https://www.copperfitusa.com/collections/ice as it appeared on May 21, 2022) last viewed on February 14, 2023.

product states on the front that the product provides "RELIEF + RECOVERY" and contains "MICRO ENCAPSULATED MENTHOL & COQ10" and states on the back that the "CoQ10" "PROMOTES ENERGY RECOVERY" and repeats the Copper Fit ICE tag line: "Motion activated, the more you move the more you gain." The packaging of each and every one of the Copper Fit ICE Products displays the same or similar statements. Exemplars of the packaging of the Copper Fit ICE Products are shown here:





35. Defendant's claim on its packaging, that the CoQ10 infused in its Copper Fit ICE Products is motion activated and then released and absorbed into the human body when the product is used, is false and misleading with respect to each of the Copper Fit ICE Products.

36. Defendant's additional claim, that the purportedly absorbed CoQ10 provides health benefits, including increased energy, is also false and misleading with respect to each of the Copper Fit ICE Products.

37. Copper Fit's advertising of the Copper Fit ICE Products contains the same false and misleading claims as its product packaging.

38. On May 31, 2020, Copper Fit posted to its Twitter account a description of its new Copper Fit ICE compression garments: "Here's the tea - Copper Fit Ice is the World's FIRST compression sleeve infused with a patented* micro-encapsulation technology delivering the cooling sensation of Menthol and the energizing properties of CoQ10 with every move you make." That tweet is shown here:[19]

---

[19] *See* https://twitter.com/CopperFit/status/1267076868815171585?cxt=HHwWgsC9zd3sx5UjAAAA last viewed on February 14, 2023.



39.     On October 29, 2020, Copper Fit published a video advertisement promoting the Copper Fit ICE product line, including, specifically, the Copper Fit ICE knee sleeve. The slickly produced video highlights that Copper Fit ICE Products are infused with Menthol and CoQ10. The video claims the Copper Fit ICE Products provide the healing sensation of Menthol and the "energizing properties of CoQ10" because the Menthol and CoQ10 infused in the fabric are both supposedly released from the fabric and absorbed into the human body when "motion activated" by the consumer wearing the product.[20]

40.     On July 29, 2021, Copper Fit published another video advertisement on YouTube promoting the Copper Fit ICE product line, including, specifically, the Copper Fit ICE Knee Sleeve. The video reiterates that Copper Fit ICE Products contain the "energizing properties of CoQ10" because the CoQ10 infused in the compression garments are released from the fabric and absorbed into the human body when "motion activated" by the consumer wearing the product.[21]

41.     The voice over to the video advertisement states in the first 24 seconds: "When knee pain stops you in your tracks and you need relief to keep you moving. Introducing Copper Fit ICE, the world's first compression sleeve to include the healing sensation of Menthol and the

---

[20] *See* https://www.ispot.tv/ad/tZJN/copper-fit-ice-knee-sleeves-motion-activated-menthol-featuring-brett-favre-jerry-rice (video with Brett Favre and Jerry Rice promoting Copper Fit ICE knee sleeves) last viewed on February 14, 2023.

[21] *See* https://www.youtube.com/watch?v=fdJlVfJoPi0b last viewed on February 14, 2023.

energizing properties of CoQ10. These micro-encapsulated ingredients are infused into the compression fabric and are released and absorbed by your movement. The more you move, the more Copper Fit Ice delivers."[22]

42.     Those voice over statements on the video advertisement are accompanied by video of actors using the Copper Fit ICE Knee Sleeve, colorful graphics showing bolts of electricity enveloping the knee wearing the sleeve, and written screen graphics stating:

a.   "World's First Motion Activated"

b.   "Now with Menthol and CoQ10"

c.   "Now Infused with Menthol and CoQ10"

d.   "Motion Activated"

e.   "The More you move, the more ICE Delivers"[23]

43.     The following are screenshots from the video advertisement showing the emphasis on the motion activation releasing CoQ10 for absorption into the human body:[24]



---









44. After presenting testimonials, the voice over to the video advertisement repeats again: "The cooling sensation of Menthol and the energizing properties of CoQ10. Activated by motion to keep you in motion." A woman named Samantha Sage then appears in the video and says: "[t]he more I move, it feels better and better. I haven't experienced anything like this."[25]

---

[25] *Id.*

45. Defendant advertised Copper Fit ICE Products directly to consumers on multiple Copper Fit websites and asserted the products provided "energizing properties" to individuals who used these products due to the infusion of CoQ10 in the compression garment.

46. On May 21, 2022, Copper Fit's copperfitusa.com website touted the benefits of Copper Fit ICE Products including the Compression Back Support, Elbow Sleeve, Compression Gloves, Knee Sleeve, Compression Socks, and Plantar Fascia Ankle Sleeve: "Copper Fit ICE is the first to incorporate the cooling sensation of menthol and the energizing properties of CoQ10 into a patented micro-encapsulation technology;" (*Emphasis added*.)[26] "Patented** Micro-Encapsulation Technology infuses menthol and the energizing properties of CoQ10 into the compression fabric."[27]

47. On May 23, 2022, the Copper Fit ICE website at https://copperfitice.com/ advertised: "Introducing Copper Fit® ICE, the World's FIRST compression sleeve infused with a patented* micro-encapsulation technology delivering the cooling sensation of Menthol and the energizing properties of CoQ10 with every move you make. The more you move, the more ICE delivers!" The site described the Copper Fit ICE Knee Sleeve as "Our Strongest Compression Sleeve Infused with Micro-Encapsulated Menthol & CoQ10!"[28]

---

[26]*See, e.g.*, https://web.archive.org/web/20220527063329/https://www.copperfitusa.com/collections/ice (archived screen capture of https://www.copperfitusa.com/collections/ice as it appeared on May 21, 2022) last viewed on February 14, 2023.

[27] *See* https://www.copperfitusa.com/products/ice-plantar-fascia-ankle-sleeve last viewed on February 14, 2023.

[28] *See* https://web.archive.org/web/20220523083555/http://copperfitice.com/ (archived screen capture of https://copperfitice.com/ as it appeared on May 23, 2022) last viewed on February 14, 2023.



  



48.    Copper Fit's Amazon storefront emphasized these features of the Copper Fit ICE

Products. For example, the Amazon storefront page for the "ICE Knee Compression Sleeve Infused with Menthol and CoQ10" stated "Each package contains 1 compression knee sleeve infused with copper, menthol, and CoQ10 … Copper Fit ICE incorporates the cooling sensation of menthol and the energizing properties of CoQ10 into a patented micro-encapsulation technology … The seamless anti-chafing sleeve is breathable, copper-infused to reduce odors, and is infused with the soothing aroma of menthol and the energizing properties of CoQ10. The more you move, the more you release."[29]

49.    Similarly, Copper Fit's Amazon storefront emphasized these features of the Copper Fit ICE Elbow Compression Sleeve, namely that each product "incorporates the cooling sensation of menthol and the energizing properties of CoQ10 into a patented micro-encapsulation technology" and "is infused with the soothing aroma of menthol and the energizing properties of CoQ10. The more you move, the more you release."[30]

50.    Promotional images for the Copper Fit ICE Knee Sleeve products sold through the Dick's Sporting Goods website also emphasize that the product has "Micro Encapsulated" "Menthol and CoQ10" and that those chemicals in the fabric are "Motion Activated," leading to "Relief + Recovery."[31]

---

[29] *See* https://www.amazon.com/Copper-Fit-Compression-Infused-Recovery/dp/B084TY9BWF last viewed on February 14, 2023; *See also* https://web.archive.org/web/20220216093911/https://www.amazon.com/Copper-Fit-Compression-Infused-Recovery/dp/B0973NS2CC (archived screen capture of https://www.amazon.com/Copper-Fit-Compression-Infused-Recovery/dp/B0973NS2CC as it appeared on February 16, 2022) last viewed on February 14, 2023.

[30] *See* https://web.archive.org/web/20220216140940/https://www.amazon.com/Copper-Fit-Compression-Infused-Menthol/dp/B08NT6L6WC/(archived screen capture of https://www.amazon.com/Copper-Fit-Compression-Infused-Menthol/dp/B08NT6L6WC/as it appeared on February 16, 2022) viewed on February 14, 2023.

[31] *See* https://web.archive.org/web/20230118061335im_/https://dks.scene7.com/is/image/GolfGalaxy/ICE-KNEES-MULTI-USE?qlt=70&wid=500&fmt=webp&op_sharpen=1 (Archived image from Dick's Sporting Goods website as it appeared on April 13, 2021) last viewed on February 14, 2023.



51.    Promotional images for the Copper Fit ICE Knee Sleeve products sold through the Dick's Sporting Goods website also emphasize other "Features and Benefits" that the "CoQ10 PROMOTES ENERGY RECOVERY" as shown here:[32]





---

[32]*See*
https://web.archive.org/web/20230118061335im/https://dks.scene7.com/is/image/GolfGalaxy/CFICEKNEE_C FIKNLXL-Black_TEC?qlt=70&wid=500&fmt=webp&op_sharpen=1 last viewed on February 14, 2023.

52. These claims are mirrored on Target's website for the Copper Fit ICE Knee Sleeve Copper Fit ICE Gloves, which states: "Our circular knit compression sleeve is infused with a patented micro-encapsulation technology that delivers the cooling sensation of menthol and energizing properties of CoQ10 with every movement. The more you move, the more ICE is released … ICE fabric is infused with a patented micro-encapsulation technology delivering the cooling sensation of menthol and energizing properties of CoQ10."[33]

53. Copper Fit's claims regarding the "energizing properties of CoQ10" in Copper Fit ICE Products also appear on product pages at Zappos.com: "Each cooling knee sleeve is designed to provide more support and help temporarily relieve muscle and joint aches. The more you move, the more menthol and CoQ10 is released for maximum comfort."[34]

### III.    Plaintiff Purchased the Copper Fit ICE Products Infused With CoQ10.

54. On September 29, 2021, Plaintiff purchased a Copper Fit ICE Knee Sleeve via Defendant's Amazon storefront. Plaintiff purchased the Copper Fit ICE Product from her home in New York and the product was delivered to her New York residence soon thereafter. Plaintiff paid Amazon's retail price for the Copper Fit ICE Product at that time.

55. Prior to purchasing the Copper Fit ICE product, Plaintiff was exposed to Defendant's online advertising regarding its claims that the CoQ10 infused in the fabric of the Copper Fit ICE Products is motion activated and released and then absorbed into the human body when using the product, and that the absorbed CoQ10 would provide health benefits, including increased energy. In addition, Plaintiff read and reviewed the product packaging, which stated that (i) the product provides "RELIEF + RECOVERY," (ii) contains "MICRO ENCAPSULATED MENTHOL & COQ10," the "CoQ10" "PROMOTES ENERGY RECOVERY" and (iv)  the product is "Motion activated, the more you move the more you gain." Plaintiff read and relied on

---

[33] *See* https://www.target.com/p/copper-fit-ice-knee-sleeve-infused-with-cooling-action-and-menthol-l-xl/-/A-81641337 last viewed on February 14, 2023; *See also* https://www.target.com/p/copper-fit-ice-gloves-infused-with-cooling-action-38-menthol-s-m/-/A-81915268 last viewed on February 14, 2023; *See also* https://www.target.com/p/copper-fit-ice-gloves-infused-with-cooling-action-and-menthol/-/A-81641335 last viewed on February 14, 2023.

[34] *See* https://www.zappos.com/p/copper-fit-ice-knit-compression-knee-sleeve-infused-with-menthol-and-coq10-for-recovery/product/9679973 last viewed on February 14, 2023.

all of these statements (both online and on the labels) when purchasing the Copper Fit ICE Product.

56.   Plaintiff purchased the Copper Fit ICE Product believing Defendant's statements that the CoQ10 infused in the fabric is released and then absorbed into the human body when moving while using the product, and that the absorbed CoQ10 would provide health benefits, including increased energy. The CoQ10 infused in the fabric is useless and the Plaintiff received no such benefits.

57.   Defendant's omission regarding the true benefits of CoQ10 was material to Plaintiff and Class Member's purchase of the Copper Fit ICE Products.

58.   Plaintiff would purchase the Copper Fit ICE Products in the future if they were formulated in a manner that provided the benefits promised or implied by the packaging. Plaintiff regularly visits places where Defendant's products are sold. However, if and when Plaintiff sees the products on the store shelves in the future, she would have no way of knowing whether Defendant changed the formulation of its product in a manner that would render its labeling claims true.

59.   Had Plaintiff known that the CoQ10 infused in the fabric of the Copper Fit ICE Products is not absorbed into the human body and, even if absorbed in some amount, provides no health benefits, she would not have purchased Defendant's Copper Fit ICE Products or, at the very least, would not have paid the price premium charged for the Copper Fit ICE Products compared to a cheaper compression garment that is not infused with CoQ10.

<u>**CLASS DEFINITION AND ALLEGATIONS**</u>

60.   Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and on behalf of all other persons similarly situated.

61.   Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**New York State Class** (the "**Class**")
All persons who, within the fullest period of law, purchased Copper Fit ICE Products in the state of New York.

62.    Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased Copper Fit ICE Products for resale.

63.    Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

64.    The proposed class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

65.    Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that they or any Class member may have suffered.

66.    **Numerosity**.  This action is appropriately suited for a class action. The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff is informed, believe, and thereon allege, that the proposed Class contains thousands of purchasers of the Copper Fit ICE Products who have been damaged by Copper Fit's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

67.    **Commonality**.  This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes a violation of New York General Business Law Section 349**;**

- Whether Defendant's conduct, as alleged herein, constitutes a violation of New York General Business Law Section 350;

- Whether Defendant labeled, advertised, marketed, and/or sold each Copper Fit ICE Products with claims that CoQ10 infused into the fabric of the products is motion activated and then released and

absorbed into the human body when using the product;

- Whether Defendant labeled, advertised, marketed, and/or sold each Copper Fit ICE Products with claims that the purportedly absorbed CoQ10 provides health benefits, including increased energy;

- Whether Defendant's labeling, advertising, marketing, and/or selling of each Copper Fit ICE Products with claims that CoQ10 infused into the fabric of the products is motion activated and then released and absorbed into the human body when using the product was and/or is false, fraudulent, deceptive, and/or misleading;

- Whether Defendant's labeling, advertising, marketing, and/or selling of each Copper Fit ICE Products with claims that the purportedly absorbed CoQ10 provides health benefits, including increased energy, was and/or is false, fraudulent, deceptive, and/or misleading;

- Whether Defendant made omissions of material fact to Plaintiff and the Class regarding the Copper Fit ICE Products; and

- How much of a price premium did  Defendant charge for the Copper Fit ICE Products when compared to similar compression sleeves.

68. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Copper Fit's blatant misrepresentations of material information. Moreover, Plaintiff' claims are typical of the Class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

69. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff purchased a Copper Fit ICE Products and was harmed by Copper Fit's deceptive misrepresentations. Plaintiff has therefore suffered an injury in fact as a result of Copper Fit's conduct, as did all Class members who purchased Copper Fit ICE Products.

70. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Copper Fit. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

71. Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Copper Fit from engaging in the acts described. Unless a Class is certified, Copper Fit will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Copper Fit will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

72. Copper Fit has acted and refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

73.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-72 as if fully set forth herein.

74.     New York General Business Law §349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in" New York.

75.     The conduct of Defendant alleged herein constitutes recurring "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the Class members seek monetary damages and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, marketing, and promoting the Copper Fit ICE Products.

76.     There is no adequate remedy at law.

77.     Defendant misleadingly, inaccurately, and deceptively presented the Copper Fit ICE Products to consumers. Defendant's improper consumer-oriented conduct in labeling, advertising, marketing, distributing, and/or selling each Copper Fit ICE Product to Plaintiff and the other Class members with false claims that (a) CoQ10 infused into the fabric of the products is motion activated and then released and absorbed into the human body when using the product, and (b) the purportedly absorbed CoQ10 provides health benefits, including increased energy. Copper Fit engaged in, and continues to engage in, deceptive acts and practices because the CoQ10 in the Copper Fit ICE Products is not released and absorbed into the human body when using the Copper Fit ICE Products, and any CoQ10 purportedly absorbed provides no health benefits. These claims were misleading in a material way in that they, *inter alia*, induced Plaintiff and New York Sub-class members to seek out and become consumers of Defendant when they otherwise would not have.

78.     Defendant engaged in unfair, deceptive, fraudulent and/or unconscionable acts or practices in the conduct of trade or commerce by making false or misleading statements regarding the nature of the benefits of the Copper Fit ICE Products.

24

79.    Defendant intended that Plaintiff and each of the other members of the Class would rely upon its unfair, deceptive, fraudulent and/or unconscionable acts or practices in the conduct of trade or commerce such that a reasonable person would in fact be misled by this deceptive conduct as described above.

80.    Defendant nonetheless proceeded with the conduct alleged herein even though it knew or reasonably should have known that the Copper Fit ICE Products (a) do not have CoQ10 infused into the fabric of the products which is motion activated and then released and absorbed into the human body when using the product, and (b) did not provide health benefits, including increased energy, through absorption of CoQ10.

81.    Information regarding the true efficacy of the Copper Fit ICE Products was known or should have been known to Defendant before it commenced labeling, advertising, marketing, distributing, and/or selling each Copper Fit ICE Product to Plaintiff and the other Class members with the foregoing false claims.

82.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

83.    Defendant's misrepresentations and omissions were material to Plaintiff and Class members who relied or should be presumed to have relied upon those misrepresentations and omissions in purchasing and using the Copper Fit ICE Products. The reasonable consumer would have expected the Copper Fit ICE Products to meet advertised specifications. Plaintiff and the Class would not have purchased or used the Copper Fit ICE Products had they known the truth about the products.

84.    Plaintiff and the Class members were injured by, *inter alia*, expending time and resources to seek out and obtain the Copper Fit ICE Products, paying a premium for the Copper Fit ICE Products after Defendant led them to believe that the Copper Fit ICE Products conferred physical, health and/or medicinal benefits described above when the Copper Fit ICE Products did not have such benefits. Accordingly, Plaintiff and the Class members did not receive what they bargained for.

85.    As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff and the Class members were damaged in an amount to be proven at trial.

86.    Defendant's deceptive and misleading practices constitute deceptive acts and practices in the conduct of business in violation of New York General Business Law § 349(a) and Plaintiff and the Class have been damaged thereby.

87.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the Class members are entitled to monetary and compensatory damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

88.    Plaintiff and the Class members seek damages, including treble damages, under New York General Business Law § 349.

89.    By reason of the foregoing,  Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of New York General Business Law § 349, and Defendant is liable to Plaintiff and the Class members for the damages they have suffered as a result of Defendant's actions. The amount of such damages is to be determined at trial.

### SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

90.    Plaintiff repeats and realleges each and every allegation contained in  paragraphs 1-72 as if fully set forth herein.

91.    Copper Fit's labeling, marketing, and advertising of the Copper Fit ICE Products is "misleading in a material respect," as it fails to disclose to consumers material information in Copper Fit's sole possession and, thus, is "false advertising."

92.    No rational individual would purchase the Copper Fit ICE Products at the prices at which they are sold in full knowledge that the CoQ10 in the Copper Fit ICE Products is not released and absorbed into the human body when using the Copper Fit ICE Products, and any CoQ10 purportedly absorbed provides no health benefits.

93.    Copper Fit's advertisements and marketing of the Copper Fit ICE Products as being

infused with CoQ10 and claiming that (a) the CoQ10 infused into the fabric of the products is motion activated and then released and absorbed into the human body when using the product, and (b) the purportedly absorbed CoQ10 provides health benefits, including increased energy, were consumer oriented.

94.    Copper Fit's advertisements and marketing of the Copper Fit ICE Products as being infused with CoQ10 and claiming that (a) the CoQ10 infused into the fabric of the products is motion activated and then released and absorbed into the human body when using the product, and (b) the purportedly absorbed CoQ10 provides health benefits, including increased energy, were misleading in a material respect.

95.    By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the Class have been substantially injured by paying for Copper Fit ICE Products that have diminished, lesser or no value due to their foregoing false claims.

96.    Copper Fit's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Copper Fit is liable to Plaintiff and the members Class for the actual damages that they have suffered as a result of Copper Fit's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

97.    Copper Fit continues to violate Section 350 of the New York General Business Law and continues to aggrieve Plaintiff and the members of the Class.

98.    Plaintiff further demands injunctive relief enjoining Copper Fit from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 350 of the New York General Business Law.

99.    Copper Fit's conduct, as alleged herein, in violation of Section 350 of the New York General Business Law was engaged in by Copper Fit willfully and/or knowingly.

100. Plaintiff Gray further demands injunctive relief enjoining Copper Fit from continuing to engage in, use, or employ any act, including advertisements, packaging, or other

representations, prohibited by Section 350 of the New York General Business Law.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

101.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-72 as if fully set forth herein.

102.  Plaintiff brings this Count on behalf of herself and the Class against Defendant.

103.  This claim is brought under the laws of the State of New York.

104.  Defendant's conduct violated, *inter alia*, state, and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the Copper Fit ICE Products while misrepresenting and omitting material facts, including by making the labeling representations and omissions alleged herein.

105.  Defendant's unlawful conduct allowed it to knowingly realize substantial revenues from selling the Copper Fit ICE Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class members and to Defendant's benefit and enrichment. Defendant has violated fundamental principles of justice, equity, and good conscience.

106. Plaintiff and Class members conferred significant financial benefits and paid substantial compensation to Defendant for the Copper Fit ICE Products, which were not as Defendant represented them to be.

107.  Defendant knowingly received and enjoyed the benefits conferred by Plaintiff and the Class members.

108.  It is inequitable for Defendant to retain the benefits conferred by Plaintiff and the Class members' overpayments for the Copper Fit ICE Products.

109. Plaintiff and Class members seek to establish a constructive trust from which Plaintiff and Class members may seek restitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A.    For an order certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's undersigned attorneys as Class Counsel to represent the Class Members;

B.    For an order declaring that Defendant's conduct violated the laws referenced herein;

C.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.    For statutory and compensatory damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For injunctive relief as pleaded or as the Court may deem proper;

G.    For an order of restitution and all other forms of equitable monetary relief;

H.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit;

I.    Damages in an amount to be determined at trial; and

J.    For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all triable issues.

Dated: February 15, 2023          Respectfully submitted,

By: */s/ Mason Barney*
**SIRI & GLIMSTAD LLP**
Mason Barney, Esq. (New York Bar No. 4405809)
Kyle McLean, Esq. (*Pro Hac Vice to be filed*)
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: mbarney@sirillp.com
Email: kmclean@sirillp.com


**LAUKAITIS LAW FIRM LLC**
Kevin Laukaitis, Esq. (*Pro Hac Vice to be filed*)
737 Bainbridge Street #155
Philadelphia, PA 19147
Phone: (215) 789-4462
Email: klaukaitis@laukaitislaw.com


*Attorneys for Plaintiff and the Proposed Class*